UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JOYCE HAMLETT and
LETRICIA HAMLETT (Disabled Daughter),

                Plaintiffs

   -against-

SANTANDER CONSUMER USA, INC.

                Defendant.

-------------------------------------------------------------------X

STATE OF NEW YORK )
                  ) ss.
COUNTY OF         )

**FILED**
**IN CLERK'S OFFICE**
**U S DISTRICT COURT E.D N Y**

★   MAY 30 2012   ★

**LONG ISLAND OFFICE**

No. 11-CV-6106 (JFB)(GRB)

**AFFIDAVIT IN OPPOSITION
TO DEFENDANT'S
MOTION TO DISMISS**

JOYCE HAMLETT, being duly sworn, hereby affirms pursuant to the CPLR:

1.     I am an individual Plaintiff, complaining of the Defendants on behalf of myself and my disabled daughter in the above captioned matter, and as such I am fully familiar with the facts and circumstances herein.

2.     I submit this affirmation in opposition to the Defendants' Motion to Dismiss and supporting papers including the Defendant's Memorandum of Law in Support of Motion to Dismiss the Complaint (collectively "Motion to Dismiss"), dated April 30, 2012, in which the Defendants ask the court to dismiss the Plaintiffs' Amended Complaint ("Amended Complaint" or "Complaint") filed March 12, 2012.

## PRELIMINARY STATEMENT

3.     Defendants Motion to Dismiss Plaintiffs' Complaint should be denied in its entirety, because the Complaint sufficiently states claims for violations of the FDCPA, TCPA and intentional infliction of emotional distress as defined.

**RECEIVED**

MAY 3 0 2012

**EDNY PRO SE OFFICE**

## ARGUMENT

4.     Plaintiffs restate, reiterate, and re-allege all the statements, allegations, and causes of action set forth in the Amended Complaint, annexed hereto as Exhibit A.

### A.  Defendant(s) is a debt collection agency or debt collector.

5.     Defendants contend that they are not "debt collectors" as defined by the Federal Debt Collection and Practices Act (which aims to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e)) ("FDCPA"), however this statement is untrue.

6.     The FDCPA defines a "debt collector" as:

> *"any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts , or who regularly collects or attempts to collect , directly or indirectly, debts owed or due or asserted to be owed or due another . Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts . For the purpose of section 1692f ( 6 ) of this title , such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests . See 15 U.S.C.  1692a (6) .*

7.     Plaintiffs contend, to the contrary, that Santander Consumer USA, Inc. ("Santander") is in fact a debtor collector and/or debt collection agency.

8.    Annexed hereto as Exhibit B is a copy of the commercial business license of the Defendant Santander, which clearly states that it is a "debt collection agency".

9.    Moreover, contrary to the Defendants' claims that Santander is the "creditor" or "owners" as defined in the FDCPA 15 U.S.C. § 1692a(4), and based on factual support according to SEC Certified Attestation Form 8-K report dated August 27, 2010 reported by HSBC, it is clear, concise and convincing evidence that Santander are not in fact a "creditor" or owners as defined under FDCPA 15 U.S.C. §1692a(4). See *Kimber v. Federal Financial Corp., 668 F. Supp. 1480 - Dist. Court, MD Alabama 1987.* Furthermore, annexed hereto as Exhibit B2, is a copy of the SEC Attestion Form 10-Q for the quarterly period ended June 30, 2010, which clearly states " *In March 2010, HSBC sold their auto finance receivable serving operations to Santander. It also stated "while this business was operating in run-off mode at June 30, 2010, we have not reported it as a discontinued operation because we continued to generate cash flow from the on-going collection of the receivables, including interest and fees."[EMPHASIS ADDED]*

10.    Santander never extended credit to Plaintiffs Joyce Hamlett or Letricia Hamlett. And debt was in default when assigned and transferred as an alleged defaulted debt to facilitate collection for HSBC. Debt collection agencies, by definition are not financial institutions or banks, and cannot and do not extend credit to consumers. SEC Certified Attestation Form 8K (See Exhibit C) which states:

> *Item 8.01. Other Events.*
>
> *" In connection with the sale, HSBC finance transferred and assigned to Santander, and Santander assumed and agreed to perform, the obligation of HSBC Finance as "Servicer" under the Sale and Servicing*

> *Agreements in effect with respect to HSBC Finance's outstanding*
>
> *securitization transactions, know as HSBC Automotive Trust (USA)*
>
> *2006-1, HSBC Automotive Trust (USA) 2006-2, HSBC Automotive Trust (USA)*
>
> *2006-3. HSBC Automotive Trust2007-1 (collectively, the Securitization*
>
> *Trusts")…"*

11.     Thus, Plaintiffs are not basing their complaint on a "single faulty premise" and state a valid claim against said Defendant, Santander as violating FDCPA.

12.     Moreover, whether or not Santander is a debt collector, or debt collection agency is a disputed factual issue that should not be decided on this motion to dismiss.  This is clearly stated on their statement sent to Plaintiff dated 12/05/2010 where it states "this is an attempt to collect a debt and any information obtained will be used for that purpose.  This communication is from a debt collector."  See Exhibit D (Highlighted for convenience).

**B.  Defendant(s) clearly violated the FDCPA and the TCPA Guidelines.**

13.     Plaintiffs also reiterate that as a debt collection agency, the violations of the FDCPA and Telephone Consumer Protections Act ("TCPA") do and should apply to the Defendant Santander, as no "*established business relationship*" existed between the Plaintiffs and Defendant Santander, contrary to Defendants' contentions.

14.     Furthermore, Defendant Santander does not deny calling Plaintiffs excessively 10-15 times a day seven (7) days a week beginning as early as 8:00am, and as late as 10:00pm from December 19, 2010 to November 1, 2011 totaling over 9500 calls.

15.     FCC rule 47 C.F.R. § 64.1200(a)(2) states that;

> *"(a) No person or entity may: (1) Initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the*

*called party) using an automatic telephone dialing system or an artificial or prerecorded voice;*

*(2) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call;*

> *(i) Is made for emergency purposes;*
> *(ii) Is not made for a commercial purpose;*
> *(iii) Is made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation;*
> *(iv) Is made to any person with whom the caller has an established business relationship at the time the call is made; or*
> *(v) Is made by or on behalf of a tax-exempt nonprofit organization..."*

16.     These calls were made with the intent to annoy, abuse or harass the Plaintiffs at the called numbers, and made without Plaintiffs permission.

17.     Said calls were not limited to the Plaintiff's residential line, but most calls were made to both Plaintiffs' respective cellular telephone lines, in clear violation of the FDCPA and TCPA guidelines.  Defendant argues that the Federal Communications Commission ("FCC") has expressly exempted from the TCPA calls made for debt collection purposes.  (Def.'s Mot. Dismiss Section II.)  Indeed, in a 1992 Report and Order, the FCC exercised its authority under the TCPA to "create an express exemption for calls made to a party with whom the caller has an established business relationship."  Watson v. NCO Group, Inc., 462 F. Supp. 2d 641, 644 (E.D. Pa. 2006); In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd.8752, 8771-8772 (1992).  The Report went on to clarify that "all debt collection circumstances involve a prior or existing business relationship," such that debt collection calls fall within the Report's stated exemptions. *See 7 FCC Rcd. at 8771-8772.*  This exemption, however, applies only to residential telephone calls under section 227(b)(1)(B) – a provision not at issue here.  In this case, Plaintiffs allege that Defendants contacted them via cell

phone, placing their claim within the purview of 227(b)(1)(A)(iii). As noted above, the text of

section 227(b)(1)(A)(iii) offers exemptions only for "a call made for emergency purposes or

made with the prior express consent of the called party." 47 U.S.C. §227(b)(1)(A)(iii). In a

2008 Declaratory Ruling, the FCC clarified that such express consent "is deemed to be granted

only if the wireless number was provided by the consumer to the creditor, and that such number

was provided during the transaction that resulted in the debt owed." In the Matter of Rules and

Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for

Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 564-65 (2008). The FCC also reiterated

the lack of other exceptions to section 227(b)(1)(A)(iii), recognizing that prerecorded calls could

be particularly costly to cellular subscribers who pay for incoming calls. Id. at 562, 565 (citing

Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,18 FCC Rcd. 14014,

14115 (2003)).

      18.     The United States Supreme Court has also reviewed the statue and described how

the TCPA principally outlaws five practices: "First, the [TCPA] makes it unlawful to use an

automatic telephone dialing system or an artificial or prerecorded voice message, without the

prior express consent of the called party, to call any emergency telephone line, hospital patient,

pager, cellular telephone, or other service for which the receiver is charged for the call. [Text

messages are included in this provision]. See 47 U. S. C. §227(b)(1)(A). Second, the TCPA

forbids using artificial or prerecorded voice messages to call residential telephone lines without

prior express consent. §227(b)(1)(B). Third, the [TCPA] proscribes sending unsolicited

advertisements to fax machines. §227(b)(1)(C). Fourth, it bans using automatic telephone dialing

systems to engage two or more of a business's telephone lines simultaneously. §227(b)(1)(D).

19.    Said calls were not limited the hours for phone contact and regularly occurred after 9:00 p.m. in clear violation of the FDCPA and TCPA guidelines.

20.    Said calls were excessive in frequency, which in itself was harassing of the Plaintiffs, and Defendants refused to cease communications even after multiple oral and written requests by the Plaintiff, Joyce Hamlett. Multiple cease and desist letters, as well as validation requests were sent to the Defendants: The first on December 20, 2010; the second on February 24, 2011; and the third on June 25, 2011. The fourth and final letter was sent from law firm Feldman, Kramer & Monaco, P.C. on July 20, 2011. (See Amended Complaint - Exhibits K, L, L1, M). Case law states

"Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Shand-Pistilli v. Prof'l Account Servs., Inc., No. CIV.A.10-1808, 2010 WL 2978029, at \*4 (E.D. Pa. July 26, 2010) (citing Akalwadi v. Risk Mgmt. Alt., Inc., 336 F. Supp. 2d 492, 505 (D. Md. 2004)).* In Shand-Pistilli, the court found that the plaintiff's allegations of the defendant's "continuous calls" to her home and refusal to comply with her oral [or written] request to stop calling were factually sufficient to state a plausible claim under section 1692d(5). Id. at \*4-5.

21.    Said calls were often made to Letricia Hamlett, Joyce Hamlett's disabled daughter, who was not, at any time, the subject of the loan, in violation of FDCPA and TCPA guidelines, nor did Plaintiffs give permission to contact Letricia Hamlett in reference to said loan or the alleged debt. The Complaint alleges that Defendants contacted Plaintiff in an effort to collect a debt incurred by Plaintiff's family member. Courts within the Third Circuit have consistently held that an attempt to collect a debt from a non-debtor constitutes a "false representation" as to the character or status of the debt in violation of 1692e. *See Beattie v. D.M.*

*Collections, Inc., 754 F. Supp. 383, 392 (D. Del. 1991); Dutton v. Wolhar, 809 F. Supp. 1130, 1137 (D. Del. 1992).*

22.     Moreover, threats and/or misleading representations about issuing a warrant for the Plaintiffs arrest, reporting the vehicle (the subject of the original loan made through the actual creditor, HSBC) stolen, made by the Defendants agents were in clear violation of the FDCPA and TCPA guidelines.  It should be noted that while such allegations are largely conclusory, relevant case law indicates that Plaintiff must further detail the type of profanity or threat Defendants used in order to fulfill the pleading requirements of Rule 12(b)(6).  To the contrary, current FDCPA jurisprudence on this issue suggests that allegations of profanity alone are sufficient to state a claim under 1692d(2).  *See Crain v. Pinnacle Fin. Group of MN, Inc., No. CIV.A.07-12075 2007 WL 3408540, at \*5 (E.D. Mich. Nov. 14, 2007) (finding allegations that "profane language  or threat was used" enough to state a "clear violation" of 1692d(2)); Iruegas v. Diversified Adjustment Serv., Inc., No. CIV.A.09-898, 2010 WL 1171088, at \*2 (W.D. Tex. Mar. 22, 2010)(finding allegations that collector "used profane and abusive language" sufficient to state a claim under 1692d(2)).*

23.     Defendants further violated the FDCPA by refusing to comply with multiple requests for validation, statement of accounts, and record of payments made by Plaintiffs upon the Defendant, Santander, which to date have still not been complied with.

**C.  Defendants intentional inflicted emotional distress on Plaintiffs.**

24.     Defendants actions surpasses the bounds of decency for their egregious actions against Plaintiffs, by harassing Plaintiffs with excessive, sometimes threatening calls at all times of the day and night over an extended period of time.

25.     Even more horrendous are these actions inflicted such treatment on a mentally incapable individual, especially after being informed that Plaintiff Letricia Hamlett, a disabled individual had no such involvement with the alleged debt.

26.     Under New York law, in order to establish a cause of action based on intentional infliction of emotional distress, plaintiff must demonstrate the following four elements:

> *(1) extreme and outrageous conduct on the part of defendant (2) that defendant possesses the intent to cause, or exhibits disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between defendant's conduct and the injury suffered; and (4) that plaintiff endures severe emotional distress.*

27.     Defendants did in fact intentionally and continuously called Plaintiff Letricia Hamlett (as well as Joyce Hamlett) 10-15 times per day 7 days a week on cellular telephone after receiving multiple cease and desist letters which informed of Plaintiff Letricia Hamlett's mental status.

28.     Said calls were often threatening and messages were left on Plaintiff's cellular phone that her mother is going to be arrested after the vehicle is reported as stolen.

29.     Due to Plaintiff Letricia Hamlett's mental status and disability, these actions caused Plaintiff Letricia Hamlett to act out anger by way of violence, worrying, crying about her mother Plaintiff Joyce Hamlett being arrested.

30.     Due to Defendants' actions, both Plaintiffs experienced fear, anxiety, distress, headaches, frustration, loss of sleep, and humiliation, further exacerbated by Letricia's mental status and resulting acting out, and required Letricia Hamlett to need increased medication.

31.     U.S.C. Section 1692k(a)(1) authorizes an award of "any actual damage sustained by [any] person as a result of [a defendant's violation of the FDCPA]." Actual damages are intended to compensate a plaintiff for "out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA. *See Mostiller v. Chase Asset Recovery Corp., No. 09-CV-218A, 2010 WL 335023, at *3 (W.D.N.Y. January 22, 2010)*

*(quoting Miltonv. Rosicki, Rosicki & Assocs., P.C., No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007).*

32.     Plaintiffs should be entitled to Punitive and Mental Anguish damages.
*See Midland Funding LLC v. Chrystal A. Snow., No. cc-08-05810-d, (C.C.L.T.X. No. 4., Oct. 20, 2009).*

33.     Defendant Santander has less than pristine history and a exuberant amount of complaints with multiple government agencies for violation government laws.  The Federal Trade Commission has provided certified documents of complaints of Fraud, Identity Theft, etc.. Annexed hereto are copies of complaints against Santander for similar claims stated by the Plaintiffs in this matter.  Annexed hereto as Exhibit E are copies of some of those complaints.

34.     Santander is facing multiple individual and class action lawsuits for fraud and violations of FDCPA, TCPA and FCC guidelines.   While there are too many to list, some examples include:

> *Pool v. Santander Consumer USA, Inc. et al., No. 4:11-cv-00894-Y TRM (N.D.T. Dec. 29, 2011) (Which was reported by Becky Oliver on KDEW-Fox 4 Dallas-Fort Worth News)*
> *Robinson v. Santander Consumer USA, Inc. No. 2:2010cv00016-DDN (E.D.M.O. Mar 2010)*
> *Stephanae Prude vs Santander Consumer USA, Inc. et al, No. 7:2010cv01014-LSC (N.D.A.L. April 20, 2010).*

*Griffin v. Santander Bank et el, No. 1:12-cv-01249 SJF-ETB (E.D.N.Y. Mar. 14, 2012)*

*Burton et al v. Santander Consumer USA et al, No. 1:11-cv-04320 - MEA (N.D.A.L. June 24, 2011)*

*Case v. Santander Consumer USA, Inc. et al, No. 2:11-cv-02462 - WY (E.D.P.A. April 8, 2011)*

*Lutz v. Santander Consumer USA, Inc. et al, No. 2:11-cv-07672-AB (E.D.P.A. Dec. 15, 2011)*

*Beal v. Santander Consumer USA, Inc. et al, No. 3:10-cv-00835-MRK (C.D.C. May 27, 2010)*

*Bridges et el v. Bridges al v. Santander Consumer USA, Inc., No. 1:11-cv-03096-WDQ  (M.D.C. Oct. 31, 2011)*

*Garner v. Santander Consumer USA Inc., No. 3:09-cv-01265-G-AJF (N.D.T. July 2, 2009)*

**Civil Investigative Demand** *- by State of Texas Office Of The Attorney General which was initiated for receiving over 600 complaints for questionable repossessions, violations of government laws that protect consumers, etc. (See Exhibit F)*

*Haynes vs Santander Consumer USA No. 2:11-CV-2586-RDP (N.D.A.L. July 15, 2011).*

*Tercia Pereira vs Santander Consumer USA, Inc., No. 11-cv-8987-CPK (N.D.I.L. Dec. 19, 2011).*

35.     These complaints and lawsuits, while not conclusatory, show a pattern of behavior that Santander has a record of behavior that would illustrate that it is regular business practice for their company to engage in fraudulent, deceptive and egregious behavior against consumers, and likely routinely violate the FDCPA and TCPA guidelines, such as alleged in this Complaint.

36.     Such conduct cannot be tolerated by a civilized society, and it is up to the judicial system to enforce the laws and guidelines set forth in these Acts, and to hold violators responsible for their conduct and the resulting injuries sustained by consumers and debtors alike.

**D.  Standard of Review.**

37.     Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. *See FED. R. CIV. P. 12(b)(6);*

*see also Hedges v.United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544(2007).*

38.    A motion to dismiss is defeated where the complaint alleges "enough factual matter (taken as true)" to suggest that a violation occurred, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."

39.    Under the liberal pleading standard of Fed. R. Civ. P. 8(a), only "a short plain statement of the claim showing that the pleader is entitled to relief" is required, the purpose of which is to place the opposition on notice of the conduct charged. A court's task in resolving a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. See *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); See also Register v. PNC Fin. Servs. Group, Inc.,477 F.3d 56, 61 (3d Cir. 2007)* (on a motion to dismiss, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").

40.    Twombly instructs courts to apply a "plausibility" standard of review under Fed. R.Civ. 12 (b) (6).  550 U.S. at 553.

41.    In this case, Plaintiffs have submitted at least three (3) valid causes of action, supported by evidence, which in light of the foregoing, the Court should find that Plaintiff has stated a plausible claim under 1692d(2), 1692d(5) and 1692e(10), and should award Plaintiffs requested relief and such other and further relief as may be deemed just and proper.

**WHEREFORE,** on behalf of my daughter and myself, I respectfully request that the Court deny the Defendant's motion to dismiss, and to order such further relief as it deems just and proper.

Dated: WESTBURY , New York
May 30th 2012

_Joyce Hamlett_

Joyce Hamlett (Pro Se)
Plaintiff
15 Madison Avenue
Hemptead, NY 11550
(516) 808-0508


Sworn to before me this 30th day
Of May, 2012

_Amy Blaser_
Notary Public
My commission expires on

AMY BLASER
Notary Public, State of New York
No. 01BL6140116
Qualified in Nassau County
Commission Expires January 17, 2014