UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOYCE HAMLETT and
LETRICIA HAMLETT (disabled daughter),                         **REPORT AND**
                                                             **RECOMMENDATION**
                              Plaintiffs,                     CV 11-6106 (JFB) (GRB)

                    -against-

SANTANDER CONSUMER USA, INC.,
HSBC AUTO FINANCE, HSBC AUTO
CREDIT, INC.

                              Defendants.
-----------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

        Defendants Santander Consumer USA, Inc. ("Santander"), HSBC Auto Finance and

HSBC Auto Credit, Inc. (collectively "defendants") move to dismiss this action brought by Joyce

Hamlett and Letricia Hamlet, *pro se* plaintiffs ("plaintiffs"), seeking recovery for allegedly

abusive debt collection practices by the defendants generally and, in particular by Santander.

Because defendants' principal argument – to wit: that Santander was not a "debt collector" as it

had acquired plaintiffs' debt from HSBC – is easily dispatched at this juncture because, among

other things, Santander apparently sent plaintiffs a communication identifying itself as a debt

collector -- the motion should be denied in large part.  At the same time, defendants have

identified one claim which cannot be established under applicable law, which should be

dismissed.

                              **PROCEDURAL HISTORY**

        Plaintiffs commenced this action against defendants by the filing of a Complaint on

December 15, 2011.  Complaint ("Compl"), DE [1].  On April 30, 2012, defendants filed the

instant motion to dismiss for failure to state a claim.   By Order dated October 26, 2012, this

motion was referred to the undersigned for Report and Recommendation by the Honorable

Joseph F. Bianco.

## FACTUAL BACKGROUND

### The Amended Complaint

In a detailed amended complaint, supported by numerous attachments, the plaintiffs

allege, in relevant part, as follows:

Plaintiff Joyce Hamlett secured an automobile refinance loan of less than $15,000 with

HSBC in or around 2008, which went into default in or around 2010.  Amended Complaint

("Am. Compl."), ¶¶11-24, DE [17].   Subsequent to the default, that debt was sold to Santander.

*Id.* ¶12.   A number of disputes followed concerning the amount owed.  *Id.* ¶¶17-28.  Plaintiff

continued to make some payments on the loan through early 2011.  *Id.* ¶26.

From December 2010 through November 2011, in an effort to compel Joyce Hamlett to

pay, Santander made ten to fifteen calls to each plaintiff using an automated telephone dialing

system, seven days a week.  *Id.* ¶¶29-31.  Plaintiffs allege that Santander made 9,500 automated

calls to the plaintiffs, often leaving mechanical voice mail messages.  *Id.* ¶34.  Plaintiffs allege

that some of these messages contained false threats, including the prospect of arrest.  *Id.* ¶34 ("A

warrant will be issued for your arrest once we report the vehicle as stolen").  The complaint

catalogs efforts made by plaintiffs to bring this to an end – including retaining counsel and

sending multiple cease and desist letters – but defendants continued.  *Id.* ¶¶32-37.

The complaint also states that plaintiffs suffered emotional distress due to the

"bombardment of calls" from Santander, including an "increase of psych meds" for plaintiff

Letricia Hamlett who, notably, was not a party to the loan. ¶¶40-42.

Based on these allegations, plaintiffs seek relief for claims of (1) violations of the Fair Debt Collection Protection Act ("FDCPA"); (2) the Telephone Consumer Protection Act ("TCPA"); (3) invasion of privacy by intrusion upon seclusion and (4) intentional infliction of emotional distress.  The instant motion followed.

## DISCUSSION

### *Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

The Court must accept all factual allegations in the claims as true and draw all reasonable inferences in favor of the non-moving party.  *Matson v. Bd. of Educ. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011); *see also Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Put another way, "[f]actual

3

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

When considering a dispositive motion made against *pro se* litigants, the Court is

"mindful that a *pro se* party's pleadings must be 'liberally construed' in favor of that party and

are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*,

449 U.S. 5, 9 (1980) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  "We liberally construe

pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest

arguments they suggest." *Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007) (construing return

of property motion by *pro se* plaintiff) (internal citations omitted).

### FDCPA Claims

Dubbing it a "big white elephant in the room" and a "singularly faulty premise"

underlying the Amended Complaint, Defendants' Memorandum ("Defs. Memo.") at 2, 8, DE

[19-6], defendants predicate their effort to dismiss the FDCPA claims on the notion that

Santander was not a "debt collector," but rather made contractually-permissible efforts to collect

a debt it owned.  This argument is ostensibly premised on the language of the FDCPA, which

defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due
> or asserted to be owed or due another.

15 U.S.C. § 1692a(6).   The statute specifically excludes from this definition creditors who seek

to collect their own debts.  *See, e.g. Larsen v. JBC Legal Group, P.C.*, 533 F.Supp.2d 290, 300-

301 (E.D.N.Y. 2008) (citing cases).

Repeatedly asserting that Santander is not a debt collector, but simply a creditor collecting its own debt, defendants demand dismissal of the FDCPA claim. Defendants' self-assurance on this point is misplaced; indeed, their argument is not only meritless, but borders on the sanctionable, as this argument applied to the facts of this case is contrary to existing law.

First, while it is true that the FDCPA excludes creditors from the definition of debt collector, it is well established that "an assignee of a debt that is in default at the time the debt was obtained is considered a debt collector for purposes of the FDCPA." *Larsen*, 533 F.Supp.2d at 301. Not only do plaintiffs plainly allege that the subject debt was transferred to Santander subsequent to the default, Compl. ¶12, but – astonishingly -- defendants agree that this was the case. Defendants' Reply Memorandum ("Defs. Reply") at 4-5, DE [22] ("Plaintiffs here correctly allege the Account was in default when Santander purchased HSBC"). This acknowledgement eviscerates defendants' argument.

Furthermore, defendants' argument that Santander was not a debt collector fails for a separate, more spectacular reason. In *Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232, 235 (2d Cir. 1998), a case cited by defendants,[1] the Second Circuit noted that "a creditor becomes subject to the FDCPA if the creditor 'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'" Id., *quoting* 15 U.S.C. § 1692a(6). *Maguire* reversed a grant of summary judgment in favor of defendants where an inhouse unit of Citibank called "Debtor Assistance," failed to identity itself as Citibank, and thereby gave the impression that it was collecting a third

---

[1] Defendants cite *Maguire* at the end of a string cite of district court cases which, though helpful, are not binding precedent. *Maguire,* which is presented without explanation or even a parenthetical, undermines the proposition for which defendants cite the case. *See* Defs' Memo at 8 (*citing Maguire* in support of the assertion that "This Court dismises FDCPA claims brought against creditors that seek only to collect *their own debts").*

party debt.  "The triggering of the FDCPA does not depend on whether a third party is in fact involved in the collection of a debt, but rather whether a least sophisticated consumer would have the false impression that a third party was collecting the debt." *Maguire* at 236.

In response to this motion, plaintiffs supplied the Court with a copy of a communication sent by Santander to plaintiffs in December 2010, which states "this is an attempt to collect a debt and any information obtained will be used for that purpose.  This communication is from a debt collector."  Hamlett Affirmation in Opposition ("Hamlett Aff."), ¶12, Ex. D, DE [20]. Irrespective of the sophistication of the consumer, the words "this is an attempt to collect a debt" and "this communication is from a debt collector" would tend to give the impression that Santander was a debt collector trying to collect a debt.   Plaintiffs also provided a copy of a civil investigative demand from the Attorney General of Texas indicating that Santander is a "debt collector."   *Id.* ¶34, Ex. F.  If the office of a state Attorney General could determine that Santander acts as a debt collector, it does not seem unreasonable that the "least sophisticated consumer" might well reach the same conclusion.

In sum, particularly at this early stage,  defendants cannot establish as a matter of law that Santander is a creditor exempt from the FDCPA.  Thus, the motion to dismiss should be denied.


**TCPA Claims**

Defendants move to dismiss plaintiffs' claims under the TCPA based on an exception contained in 47 C.F.R. § 64.1200(a)(2), which excepts calls to a residential line when made pursuant to an "established business relationship."  It is difficult to imagine how that exemption would apply to Letricia Hamlett, who was not a signatory to the loan, but in fairness there is at

least one case that supports this odd interpretation of the law.  *See Santino v. NCO Fin. Sys., Inc.*,

No. 09-CV-982, 2011 WL 754874, at *6 (W.D.N.Y. Feb. 24, 2011) (holding exemption applies

to non-debtor); *but see Watson v. NCO Group, Inc*.,  462 F.Supp.2d 641, 644 (E.D.Pa. 2006)

(exemption does not apply because "an erroneously called non-debtor has no such existing

business relationship").

Yet defendants' argument fails for another reason.  As *pro se* plaintiffs correctly point out

(and counsel for defendants failed to note), the business relationship exemption applies to

residential, landline telephones, but does not apply to cell phones. Section 227 (b)(1)(B) of the

TCPA makes it unlawful:

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. §227 (b)(1)(B).   By contrast, the section governing calls to cell phones (which often

charge recipients on a per-call basis), does not provide for an exemption, making it unlawful:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
>
> (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. §227 (b)(1)(A)(iii).  Because the telephones at issue in the instant action are cellular

telephones, the exemption does not apply.  *See* Am. Compl., ¶¶ 29-30.  As such, the motion

should be denied.

### Intentional Infliction Emotional Distress

According to defendants, plaintiffs' allegations cannot support a claim for intentional or

reckless infliction of emotional distress.  Under New York law, the elements of this tort include:

7

(1) extreme and outrageous conduct, (2) intent to cause, or reckless disregard of a
substantial probability of causing, severe emotional distress, (3) a causal
connection between the conduct and the injury, and (4) severe emotional distress.

*Conboy v. AT&T Corp*., 241 F3d 242 (2d Cir. 2001).  "New York sets a high threshold for

conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional

distress."  *Bender v. City of New York*, 78 F.3d 787, 790-791 (2d Cir. 1996).

In *Conboy,* the Second Circuit rejected a claim for intentional infliction of emotional

distress based on efforts by debt collectors, holding:

As New York's highest court has observed, the standard for stating a valid claim
of intentional infliction of emotional distress is "rigorous, and difficult to satisfy."
The conduct must be "so outrageous in character, and so extreme in degree, as to
go beyond all possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized society."  UCS's alleged conduct, even if accepted
as true, simply does not rise to this level of outrageousness.  Plaintiffs were not
physically threatened, verbally abused, or publicly humiliated in any manner.
They were only harassed with numerous telephone calls from debt collectors.
This conduct is not so outrageous as to "go beyond all possible bounds of
decency" or to be regarded as "utterly intolerable in a civilized society."

*Conboy v. AT & T Corp.*,  241 F.3d at 258 -259 (2d Cir. 2001)(citations omitted).  Based on this

holding, defendants argue that the instant claims should be dismissed.

The facts before the Circuit in *Conboy* differ significantly from the allegations herein.  In

Conboy, the plaintiffs alleged between 30 and 50 calls that occurred in a one month period, and

no threats were made to plaintiffs.  *Id.* at 247.  In this matter, taking the allegations as true,

defendants called plaintiffs – including one plaintiff who suffers from mental disabilities and was

uninvolved in the underlying loan – 9,500 times over 11 months.   The defendants ignored

significant efforts to end this activity, which put them on notice of plaintiff's mental disabilities,

*see* Hamlett Aff. ¶ 25, and made threats including false threats of arrest.   While the Court in

8

*Conboy* address something that could be characterized as a significant nuisance, the allegations here are extraordinary, and could well be viewed by a jury as intolerable.   Thus, this claim is not subject to dismissal at this juncture.  *See Flatley v. Hartmann*, 138 A.D.2d 345, 346, 525 N.Y.S.2d 637, 638 (2d Dep't 1988) (refusng to dismiss intentional infliction claim predicated upon harassing hang-up telephone calls).

**Invasion of  Privacy by Intrusion Upon Seclusion**

While plaintiffs attempt to state a claim for intrusion upon seclusion, defendants correctly point out that New York has consistently refused to recognize a common law right of privacy, and hence there is no cause of action of intrusion upon seclusion under New York law.  *Howell v. New York Post Co., Inc*.  81 N.Y.2d 115, 123 (1993) (no common law tort of unreasonable intrusion upon seclusion recognized); *Arthur v. Corporate Receivables, Inc*,  No. 08-CV-00202, 2008 WL 4153683, at *1 (E.D.N.Y. Sept. 5, 2008) (rejecting common law intrusion upon seclusion claim in debt collection context).  Thus, this claim should be dismissed.


## CONCLUSION

Based on the foregoing, it is respectfully recommended that defendants' motion to dismiss be DENIED as to the claims under the FDCPA and TCPA, as well as the claim for reckless or intentional infliction of emotional distress.   It is further recommended that defendants' motion to dismiss be GRANTED as to plaintiffs' claims for invasion of privacy by intrusion upon seclusion.

## OBJECTIONS

The Clerk of the Court is hereby directed to mail a copy of this Report and

Recommendation to the representatives of each of the parties.  Any written objections to this

Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days

of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a),

72(b).  Any requests for an extension of time for filing objections must be directed to the district

judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections.  **Failure to file objections within fourteen (14) days will preclude further review**

**of this report and recommendation either by the District Court or the Court of Appeals.**

*Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or

else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008)

("failure to object timely to a magistrate's report operates as a waiver of any further judicial

review of the magistrate's decision").

Dated:  Central Islip, New York
        February 18, 2013

                                             /s/ Gary R. Brown
                                            United States Magistrate Judge